## BERKLEY.

Where two selectmen only, out of three, were present at an election, it was held, that a certificate, signed by one of them (the other being the member chosen) and the absent selectman, was "to the acceptance of the house."

Where a person, who was in possession of real estate, of the yearly value of from twelve to fifteen dollars, to which he had no legal title, had received assistance from the town, for the support of a minor child who was an idiot, and had also, for that reason and on account of his poverty, been exempted from taxation for several years, it was held, that he was not qualified to vote in the election of representatives.

If one, who is not a legal voter, throws a vote into the ballot box, before the presiding selectman has time to forbid him, it is the duty of such selectman to withdraw the vote from the box.

THE election of Samuel French, Jr., returned a member from the town of Berkley, was controverted by John Dean and others,[1] for reasons, which are fully stated in the following report of the committee on elections: —

" That a meeting, duly and legally warned for the choice of a representative to this legislature, was there held on the eleventh day of May last; that the whole number of votes given in at the election was seventy-one; necessary to a choice, thirty-six; that said French, Jr., had thirty-six votes, and was declared to be elected.

The petitioners object, that the certificate of the election of the said Samuel French, Jr., is signed by George Sanford and Henry Crane, two only of the three selectmen; that Crane was not present at the meeting; that French, Jr., though a selectman and present, did not sign the certificate; that the law requires, that a major part of the selectmen present at the meeting shall sign the certificate; and that as the requisition of the law has not, in this particular, been complied with, the certificate is void.

The petitioners further allege, that the name of Robert Sanford, an inhabitant of that town, and a qualified voter for a representative, was stricken from the list of voters, immediately previous to the election, by said Samuel French, Jr., who was one of the selectmen of that town; that said Robert Sanford

[1] 50 J. H. 50, 100, 150.

did, on the same eleventh day of May, in open town meeting, offer his vote or ballot to George Sanford, then presiding in the meeting as chairman of the selectmen, which vote was by him rejected, and that he, the said Robert Sanford, was thereby prevented from voting.

The petitioners further state, that, at the same meeting, one Stephen B. Burt having voted, the said George Sanford, chairman of the selectmen, took from the ballot box a vote or ballot, under the pretence, that it was the ballot, which the said Stephen B. Burt had deposited in the box, when from the position in which the said George Sanford stood, it was impossible that he should have seen the ballot, which the said Stephen B. Burt had deposited in the box, or the name which it bore.

And further, that if the said Robert Sanford had been permitted to vote, or if the ballot actually deposited by the said Stephen B. Burt had not been withdrawn, the election might have resulted differently.

The petitioners further represent, that the said election was conducted partially and unjustly, and in subversion of the right of suffrage.

As to the charge of partiality and misconduct, on the part of the selectmen, in conducting the meeting, the committee are of opinion, that the same is wholly unsupported by evidence.

The committee are also of opinion, that the certificate of the election of Mr. French ought to be considered by this house as sufficient. The statute relating to that subject requires, that 'the selectmen present or a major part of them shall sign a certificate, &c., or such election shall be certified to the house of representatives to their acceptance.' As no fraud or misconduct appears, with regard to the certificate, and as the reason why it was not signed by the two selectmen present was, that said French, from motives of delicacy, did not think it proper to sign the certificate of his own election, the committee presume, that the certificate will be considered sufficient.

It was agreed, that Stephen B. Burt was not a legal voter. George Sanford, the presiding selectman at the meeting, testified, that before he had time to forbid him, said Burt precipitately threw his vote into the box, and that he immediately drew the same vote from the box. He further states, that he put the vote, thus taken out, into his pocket, and did not know, until after the meeting, for whom the vote was given. After the meeting he found the vote to be for Samuel French, Jr. Mr. Dean Burt testified, that the presiding selectman stood in such a situation, that, in his opinion, he could not have known, that he took out of the box the vote put in by Stephen B. Burt. The testimony of Dean Burt being matter of opinion, and that of the presiding selectman being positive, the committee are of opinion, that the vote thus taken out of the box was the vote put in by Stephen B. Burt; and, that the presiding selectman, knowing it to be the vote put in by said Burt, not only had a right, but that it was his duty, to take it out of the box.

Much evidence was produced before the committee, relating to the rejection of the vote offered by Robert Sanford. That part of the evidence, deemed by the committee to have a bearing on the question, is, in substance, as follows :— Robert Sanford, whose vote was rejected, deposed, that he attended said meeting for the choice of representative; that after the meeting was opened, he went forward to the selectmen, and presented his vote to the chairman, who refused to receive it, giving as a reason, that his, Robert Sanford's name, was not on the list of voters; that when he presented his vote, he claimed the right of voting, but was refused; that his name had been on the list of voters in the month of March previous; and that he had not received any notice, that the selectmen would meet to correct the list of voters. It appears in evidence, that Robert Sanford has lived in the town of Berkley for the greater part of the time during the last thirty years; that he has occupied a small estate, consisting of a dwelling house and about an acre of land, which he considered as his own, but he never had a deed of it. The annual income of said estate is estimated

to be worth, to the said Robert Sanford, from twelve to fifteen dollars per annum, to others worth a less sum. There is no evidence before the committee, that said Sanford has been assessed or paid a tax within the last nine years. The reason why he was not taxed was, that he had three idiot children, two of them more than twenty years of age. Sanford has received assistance from the town for three or four years past, for the support of the two children who were of age in 1825. When he applied for assistance from the town, for the support of the idiot child under the age of twenty-one years, he was told by the selectmen, that if he should receive assistance for the minor child, he would not have a right to vote. On hearing this statement, he declined receiving such aid. One of the selectmen said, that he made this remark from motives of policy, hoping thereby to save some expense to the town. In 1826, however, he made a written application for assistance for himself and family, but did not receive it, except as above stated. The reason why said Robert Sanford has not been assessed was as before stated, and also that he was poor, and had not been considered by the assessors as able to pay a tax, if assessed. His name had not been on the list of voters for the last eight or nine years, until a few days previous to the last March meeting. It was then put on the list, but was struck from it, at, or soon after, the time appointed for said meeting for the choice of representative. It was struck off before the meeting was opened. If Robert Sanford had been permitted to vote, he states that he should have voted for Barzillai Crane. Robert Sanford's name is not on the list of petitioners. The number of names on that list is twenty-two. Seven of that number have petitioned this house for leave to withdraw their names from the petition. The committee, respectfully submitting this statement to the house, report, that, in their opinion, the said Samuel French, Jr., is entitled to his seat."

The report was made at the January session,[1] and when it

---

[1] 50 J. H. 232.

came up for consideration, Mr. Eddy, of Middleborough, moved to add thereto the following as an amendment:—

" There was no evidence, that the selectmen of said town gave any notice of any meeting, for the purpose of correcting the list of voters, except the following, to wit:—The selectmen posted up a list of voters, on the sixteenth day of February, 1829, on which was inserted the name of Robert Sanford; and that list gave notice, that 'the selectmen would be in session, at the public meeting-house, in said town, on the second Monday of March then next, for the purpose of correcting the list of voters.' At the time of striking off said Robert Sanford's name, the same list was brought forward, and another name inserted thereon.'[1]

The report and the proposed amendment were then recommitted to the committee on elections.[1]

On the fifth of February, the committee again submitted their former report, without amendment. Mr. Eddy renewed his motion to amend, which had been referred to the committee, but the house refused to sustain the same. Mr. W. W. Blake, of Boston, moved to amend the report, by reversing the conclusion thereof. This motion was also lost, and the report was then agreed to.[2]